JPM:NEM/DEL/GP
F.#2020R00580

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                                           Cr. No. <u>22-208 (CBA)</u>

QING MING YU,
        also known as "Allen Yu,"
ANTONY ABREU,
        also known as "Anthony,"
ZHE ZHANG,
        also known as "Zack,"

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X


### THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION <br> <u>TO ADMIT EVIDENCE OF OTHER ACTS</u>


BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Devon Lash
Gabriel Park
Assistant U.S. Attorneys
      (Of Counsel)

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 1

    I.    The Charged Crimes ................................................................................ 1

    II.   Evidence of Other Acts the Government Seeks to Admit ....................... 3

LEGAL STANDARD .............................................................................................. 5

    I.    Other Acts as Direct or Inextricably Intertwined Evidence ................... 5

    II.   Rule 404(b) Evidence .............................................................................. 8

ARGUMENT ......................................................................................................... 10

    I.    Allen Yu's Retaliatory Acts Toward Chris Gu Are Admissible ........... 11

    II.   The Narcotics Evidence Concerning Zhang and Abreu Is Admissible ............... 13

    A.   Marijuana Evidence ............................................................................. 14

    B.   Cocaine Trafficking Scheme................................................................ 17

    III.  Evidence of Abreu's Use of a Firearm is Admissible........................... 18

    IV.  Abreu's 2019 Traffic Violation and Arrest Are Admissible ................ 18

    V.   Abreu's Efforts to Influence or Intimidate Witnesses Are Admissible ............... 19

    VI.  The Rule 403 Balancing Test ............................................................... 21

    VII. Request for Sealing ............................................................................... 22

CONCLUSION...................................................................................................... 23

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motion in limine to admit evidence of certain acts of the defendants and their co-conspirators. The evidence described below should be admitted because it is direct proof of the charged conspiracy to commit murder-for-hire and the murder-for-hire of victim Xin "Chris" Gu. To the extent the proffered evidence is not already within the conspiracy or inextricably intertwined with proof of the charged offenses, the Court should admit this evidence because it is admissible pursuant to Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)"). For the reasons set forth below, the government's motion in limine should be granted.

BACKGROUND[1]

I.    The Charged Crimes

On May 4, 2022, a grand jury in the Eastern District of New York returned an indictment charging defendants Qing Ming "Allen" Yu, Antony Abreu, You You and Zhe Zhang with the murder-for-hire and conspiracy to commit the murder-for-hire of victim Chris Gu, all in violation of Title 18, United States Code, Section 1958(a). The defendants were arrested and arraigned on May 10, 2022. Trial is scheduled to commence on September 11, 2023.

The government's evidence at trial will show that Allen Yu hired his co-defendants to kill Chris Gu, a former trusted employee, after Chris Gu stopped working in or around August 2018 for Allen Yu's Manhattan-based property development company (called Amaco) and started a rival property development company (called KG Management). Not only was Allen Yu's

---

[1]    The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or will seek to introduce at trial. In addition, the proffer of facts as to any witness's anticipated testimony is a collection of the sum and substance of portions of the witness's anticipated testimony and does not purport to provide a complete statement of the respective witness's anticipated testimony.

company having financial troubles at the time Gu quit, but when Gu left, several Amaco clients ultimately followed Gu to his new company.  This included one client whose project Yu had expected to bring in more than $1,000,000.

To retaliate against Chris Gu, in the fall of 2018, defendant Allen Yu hired his nephew You You to recruit men who would kill Chris Gu for money.  You You in turn engaged defendant Zhang to carry out the murder, and Zhang then recruited the triggerman Abreu.  At Yu's direction, the conspirators planned to kill Chris Gu on the night he hosted a Lunar New Year celebration for his new company.  The party began on the evening of February 11, 2019, at an event space in Flushing, Queens.  The party then moved to a Flushing karaoke bar where it continued into the early hours of February 12, 2019.

That night, Zhang and Abreu waited outside of the karaoke bar for Chris Gu to leave.  At approximately 2:30 a.m. on February 12, 2019, Chris Gu left the bar and called an Uber for a ride home.  As Chris Gu waited outside for the car, Abreu exited a white Honda Accord parked nearby and shot Gu multiple times.  Zhang, the driver of the Honda, then picked up Abreu and the men fled.  Gu died later that day at the hospital.

Following the murder, in the spring of 2019, Allen Yu paid You You more than $150,000 for successfully arranging the murder.  In November 2019, at You You's behest, Allen Yu also paid Zhang.

II.   Evidence of Other Acts the Government Seeks to Admit

In the course of presenting its case-in-chief, the government intends to offer the evidence that:

(1)   When Allen Yu learned Chris Gu was leaving Amaco to start a rival company, Allen Yu took steps to destroy Gu's new company KG Management, including calling vendors and directing them not to supply Gu's company, directing subcontractors not to work for Gu, and canceling building permits to hinder a construction project.  In addition, after Allen Yu learned that another Amaco employee was also going to join Chris Gu's new company in the fall of 2018, Yu sent a letter to U.S. Citizenship and Immigration Services to effectively terminate that departing employee's work visa.[2]  These actions, among other things, directly evidence Yu's motive to harm Chris Gu and his new company.  In addition, this evidence will show that Allen Yu lied to officers from the New York City Police Department shortly after Chris Gu's murder when Yu was questioned about Gu and falsely disclaimed any animosity toward Gu for leaving Amaco.

(2)   Abreu and Zhang sold large quantities of marijuana together, with another member of the murder-for-hire conspiracy ("Co-Conspirator-1") ████████████████
████████████████, and Abreu and Zhang participated in a scheme to traffic cocaine from Mississippi to the East Coast in the winter and spring of 2020 ████
████████████████

---

[2]   ████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████

(3)     Abreu carried and used a firearm before and after Chris Gu's murder.   The
government expects to offer the following testimony and evidence about defendant
Abreu's possession and use of firearms: (a) testimony that Zhang described Abreu
as a person "could take someone out," or kill a person, and a "real gangster" who
was willing to commit violence; and (b) testimony from multiple witnesses that
before the murder and in the months following the murder that Abreu indicated to
others that he was carrying a firearm.

(4)     Abreu used fraudulent temporary license plates purportedly issued by the state of
West Virginia.   The government will offer evidence of this occurring on at least
two occasions; first, on January 28, 2019, Abreu redeemed a 2005 grey Honda
Odyssey from the Queens tow pound, which had a fraudulent West Virginia
temporary license plate (No. 544 025); second, on March 10, 2019, Abreu, who
was again driving the same grey 2005 Honda Odyssey with another fraudulent West
Virginia temporary license plate (No. 546 187), was arrested by NYPD officers in
connection with his use of the fraudulent vehicle-related paperwork.   Abreu
claimed he purchased the vehicle in West Virginia on February 13, 2019 and
produced a false bill of sale from the West Virginia car dealership dated February
13, 2019, a registration card from the same dealership and a card claiming proof of
insurance issued by the same dealership; and

(5)     Abreu sought to intimidate or influence witnesses from cooperating with law
enforcement or testifying at trial, specifically by (a) telling Co-Conspirator-1 at a
June 2022 court appearance that "rats," i.e., individuals that cooperate with law
enforcement, can be easily killed in prison by poisoning their food with fentanyl,

and (b) contacting ████████████████ using a contraband phone in

the Metropolitan Detention Center ("MDC"), to inform ████████ among other

things, that he knew ██████████ had spoken to the police and should  not speak to

the police in the future.

The government intends to present this evidence principally through witness testimony and by

introducing text messages, audio messages and social media messages sent by the defendants as

well as documentation related to the fraudulent license plates and termination of the employee

work visa.

## LEGAL STANDARD

### I.     Other Acts as Direct or Inextricably Intertwined Evidence

The test for admissibility of other acts evidence, especially in the context of

conspiracy case, does not begin with Rule 404(b); rather, "[a]n act that is alleged to have been

done in furtherance of the alleged conspiracy [] is not an 'other' act within the meaning of Rule

404(b); rather, it is part of the very act charged." United States v. Concepcion, 983 F.2d 369, 392

(2d Cir. 1992); see also United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994); United States v.

Smothers, No. 20-CR-213 (KAM), 2023 WL 348870, at *2 (E.D.N.Y. Jan. 20, 2023).  When, as

in this case, "the indictment contains a conspiracy charge, 'uncharged acts may be admissible as

direct evidence of the conspiracy itself.'" United States v. Miller, 116 F.3d 641, 682 (2d Cir. 1997)

(quoting Thai, 29 F.3d at 812).

Next, it is equally well settled that "'evidence of uncharged criminal activity is not

considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction

or series of transactions as the charged offense, if it is inextricably intertwined with the evidence

regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'"

United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (quoting United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997)); see also United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989) (same).  The Second Circuit has repeatedly upheld the admission of uncharged act evidence as direct evidence of the charged crimes where such evidence provides necessary background or context for the charged crimes.  See Gonzalez, 110 F.3d at 941-42 (uncharged burglary admissible in trial for felon in possession of a firearm because, inter alia, it provided "crucial background evidence that gave coherence to the basic sequence of events that occurred on the night" of defendants' arrest); United States v. Diaz, 176 F.3d 52, 80 (2d Cir. 1999) (evidence of uncharged acts admitted to show "how illegal relationships and mutual trust developed" between individuals); United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) (noting that evidence of other "bad acts" may be admitted "to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"); United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992) ("Prior act evidence may be admitted to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed."). In this respect, "trial court[s] may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed."  United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991) (quoting United States v. Daly, 842 F.2d 1380, 1388 (2d Cir. 1988)).

For example, under this "well-established case authority," the district court in United States v. Graziano, 558 F. Supp. 2d 304, 319 (E.D.N.Y. 2008), admitted defendants' prior

threats to the victims, an unsuccessful attempt to have them assaulted and other interactions between them, in a case charging arson of the victims' restaurant.  The district court explained: "[I]f the jury were only allowed to consider the evidence of the arson in isolation, without reference to prior alleged escalating threats and actions towards the owners of Roseanne's, the jury may be unable to understand why an individual would resort to such a drastic and violent criminal act as arson to deal with his alleged dispute with the owners."  Id. (reasoning a jury "cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge" and citing United States v. Moore, 735 F.2d 289, 292 (8th Cir. 1984)).

As to the timing of the acts, the law does not require that the only evidence of a conspiracy or other crime be from the period of the conspiracy or other crime.  See, e.g., Lutwak v. United States, 344 U.S. 604, 617 (1953) (defendants' post-conspiracy acts admissible to help show existence of immigration scheme); United States v. Mendez, 165 F.3d 15, 1998 WL 802127, at *1 (2d Cir. 1998) ("Evidence of post[-]conspiracy conduct is admissible where, as here, it had real probative value regarding [the defendants'] willingness and intent to enter into the proven conspiracy." (internal quotation marks omitted)).  This principle has equal application when the post-conspiracy act is of a conspirator rather than the defendant.  See, e.g., United States v. Tramunti, 513 F.2d 1087, 1116 (2d Cir. 1975) (citing Anderson v. United States, 417 U.S. 211, 218-19 (1974)). In short, consistent with common sense, "[e]vidence is not irre[-]levant merely because it occurs after a conspiracy has ended."  United States v. Clark, 489 F. App'x 558, 561 n.4 (3d Cir. 2012).

Similarly, uncharged conduct may be admissible even if it occurred prior to the charged conspiracy if it allows the jury to understand the origin of the defendants' participation in

the charged conspiracy, as well as relationships between the co-conspirators.  See United States v. Langford, 990 F.2d 65, 70 (2d Cir. 1993) ("It is within the court's discretion to admit evidence of acts committed prior to the time charged in the indictment to prove the existence of the alleged conspiracy as well as to show its background and history."); United States v. Williams, No. 13-CR-419 (S-2) (DLI), 2016 WL 4536864, at *7 (E.D.N.Y. Aug. 30, 2016); United States v. Rivera, No. 13-CR-149 (KAM), 2015 WL 1875658, at *3 (E.D.N.Y. Apr. 22, 2015), aff'd sub nom. United States v. Garrett, No. 17-59, 2022 WL 2979588 (2d Cir. July 28, 2022) (finding that acts by co-conspirators prior to the start of the conspiracy elaborate the relationship between the defendants).

II.    Rule 404(b) Evidence

In the alternative, evidence of uncharged crimes or "other acts" may also be admitted pursuant to Rule 404(b) for permissible purposes, including to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.  See Fed. R. Evid. 404(b)(2); see also United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988).

The Second Circuit has emphasized that Rule 404(b) is a rule of broad reach and liberal application, and applies an "inclusionary or positive approach" to admitting evidence of "other acts."  See United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002) (citing Pitre, 960 F.2d at 1118); see also United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984) ("We have adopted the inclusionary or positive approach to [404(b)]; as long as the evidence is not offered to prove propensity, it is admissible.").  A party must satisfy three requirements for evidence of "other crimes, wrongs or acts" to be admitted under the rule.  First, the evidence must be offered for a purpose other than to prove a defendant's bad character or criminal propensity.  United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991); United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989).  Second, the evidence must be relevant under Rules 401 and 402 and not run afoul of Rule

403.  See Mickens, 926 F.2d at 1328; Ortiz, 857 F.2d at 903; Levy, 731 F.2d at 1002.  Third, if the

defendant requests that the jury be instructed as to the limited purpose for which the government's

evidence is being admitted, the court must furnish such an instruction.  See Mickens, 926 F.2d at

1328-29; Levy, 731 F.2d at 1002.

   The Second Circuit repeatedly has held that evidence of uncharged crimes may be

admitted at trial to establish the existence and development of a criminal relationship between co-

conspirators.  See, e.g., United States v. Williams, 205 F.3d 23, 33-34 (2d Cir. 2000) (upholding

admission of evidence relating to the defendant's prior criminal activities with co-conspirators in

charged drug conspiracy as relevant evidence to inform jury of the background of the conspiracy

charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal

relationship between the participants in the crime developed); United States v. Pipola, 83 F.3d 556,

565-66 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to

explain how a criminal relationship developed; this sort of proof furnishes admissible background

information in a conspiracy case."); United States v. Rosa, 11 F.3d 315, 333-34 (2d Cir. 1993)

(holding that co-defendants' relationship over a 14-year period, during which stolen property and

narcotics crimes were committed, "was properly admitted to explain how the illegal relationship

between the two [defendants] developed and to explain why [one defendant] . . . appointed [the

other defendant] to a leading position in the Organization"); United States v. Harris, 733 F.2d 994,

1006-07 (2d Cir. 1984) (upholding admission of evidence of defendant's previous narcotics

transactions with informant who posed as prospective narcotics customer in connection with

charged conspiracy, even though informant was not a member of the charged conspiracy, because

the evidence "tended to show the basis for Harris's trust of [the informant]").

In addition, to the extent that evidence of an uncharged crime is offered to prove knowledge or intent (i.e., state of mind), the law requires that the other act and the charged conduct be "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge [or intent] inference advocated by the proponent of the evidence," else it would not be relevant. United States v. Aminy, 15 F.3d 258, 260 (2d Cir. 1994) (quoting United States v. Peterson, 808 F.2d 969, 974 (2d Cir. 1987) (internal quotation marks omitted)); see also United States v. Paulino, 445 F.3d 211, 223 (2d Cir. 2006) (prior arrest for small amount of cocaine base street-level distribution sufficiently similar to prove knowledge and intent for charged crime of possession of large amount of powder cocaine in residence); United States v. Araujo, 79 F.3d 7, 8 (2d Cir. 1996) (explaining similarity rule for knowledge and intent proof is "simply a rule of relevance").

Finally, additional bases for admitting other acts evidence under Rule 404(b) include "corroborat[ing] crucial prosecution testimony" if the corroboration is "direct and the matter corroborated is significant," United States v. Everett, 825 F.2d 658, 660 (2d Cir. 1987) (internal quotation marks omitted), and, where cross-examination into a government witness's bad acts for impeachment purposes is anticipated, allowing the government to elicit the witness's testimony about such acts on direct examination so as to avoid the appearance that the government is concealing such purported impeachment evidence from the jury, see, e.g., United States v. Guerrero, 882 F. Supp. 2d 463, 493 (S.D.N.Y. 2011).

<u>ARGUMENT</u>

The evidence the government seeks to introduce will constitute either direct evidence of the murder conspiracy or evidence that is inextricably intertwined with the conspiracy evidence and thus necessary to complete the story of the charged offenses or to explain the

relationships between the defendants and the development of their criminal relationships and trust. Alternatively, the proffered evidence should be admitted under Rule 404(b) to show knowledge, intent, motive, and plan, among other permitted reasons. Finally, the evidence identified above passes Rule 403's balancing test.

I.     Allen Yu's Retaliatory Acts Toward Chris Gu Are Admissible

The government will offer evidence that when Allen Yu learned Chris Gu was leaving Amaco to start a rival company, Allen Yu attempted to destroy Chris Gu's new company by instructing vendors to cut off supply lines, directing subcontractors not to work for Gu, canceling building permits, and reporting one of Gu's employees to immigration authorities. The evidence will show that when Allen Yu's actions failed to damage Chris Gu's new venture, Allen Yu hired men to kill Gu. The evidence of escalating hostility by Allen Yu is foremost direct evidence of the charged offenses because it clearly demonstrates Yu's motive and planning to harm Gu.

Allen Yu's attempts to divert supplies, cancel permits and subvert contractors and an employee began right after Yu learned Chris Gu was leaving Amaco to start a rival company in August 2018 and thus, occurred during the charged conspiracy (in the fall of 2018). At that point, not only had Gu worked for Allen Yu for many years, Gu's decision to start a rival company clearly threatened and was harming Yu's Amaco business. Thus, in presenting evidence that Allen Yu attempted to destroy Chris Gu's business by cutting off supplies and access to subcontractors and tried to prevent an Amaco employee from working for Gu (by terminating his visa), Allen Yu evidenced clear hostility toward Gu entirely consistent with a motive to cause Gu harm. This evidence also plainly demonstrates that Yu had put in place plan to harm Gu. Such evidence of Allen Yu's hostilities against Gu provides direct evidence that Gu's decision to start a competing

11

business led Allen Yu to retaliate against Gu.  Courts routinely admit such motive evidence, even

where that evidence may encompass other misconduct.  See, e.g., Graziano, 558 F. Supp. 2d at

319–20 (admitting prior threats and attempts to assault the victims to "help[] the jury understand

why the defendant allegedly decided to resort to" the charged crime of arson); United States v.

Pedroza, 750 F.2d 187, 200-01 (2d Cir. 1984) (noting "[i]t is normally appropriate to admit proof

of motive" and allowing evidence of defendant's participation in uncharged cocaine transaction to

prove defendants had kidnapped the victim to recover seven kilograms of cocaine); United States

v. Chan, No. 97-CR-1053 (PKL), 2002 WL 46994, at *3 (S.D.N.Y. Jan. 14, 2002) (evidence of

defendant's gambling activity, namely acting as a bookie for some of the other coconspirators, his

failed check fraud scheme, and his illegal firearm sale is admissible to prove the defendant's

motive to become involved in the alleged narcotics trafficking); United States v. Pacheco, 902 F.

Supp. 469, 474 (S.D.N.Y.1995) (evidence of uncharged narcotics conspiracy admissible to prove

motive for charged kidnapping); United States v. Frank, 11 F. Supp. 2d 314, 317 (S.D.N.Y. 1998)

(evidence of defendant's prior narcotics dealings is highly probative of his motive to commit the

crimes charged in the indictment and is necessary to complete the story of the crimes charged).

Accordingly, without this information, the jury would be "unable to understand the government's

theory of the case."  Frank, 11 F. Supp. 2d at 317 (quoting Pedroza, 750 F.2d at 201).  This evidence

is properly admitted because it helps the jury decide—on the basis of motive rather than

character—whether Allen Yu was the architect of the scheme to murder Gu.

 In addition, the evidence concerning Allen Yu's reaction to Gu's departure

completes the story of and provides essential background for the murder of Chris Gu.  Indeed,

courts in the Second Circuit routinely admit evidence where it bears on a relevant relationship

between the defendant and another individual or where the evidence furthers a jury's

understanding of how the crime came about and the defendant and others' role in it.  See e.g., Graziano, 558 F. Supp. 2d at 319; Gonzalez, 110 F.3d at 941-42; Inserra, 34 F.3d at 89.

Finally, Allen Yu's actions toward Gu and his company, when coupled with Yu's statements to the NYPD in March 2019, are also highly probative of Allen Yu's consciousness of guilt.  United States v. Nektalov, 325 F. Supp. 2d 367, 371 (S.D.N.Y. 2004) ("[w]here a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged." (quoting United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993))).  Despite Allen Yu's efforts to destroy Chris Gu's company, shortly after Chris Gu's murder, Allen Yu told NYPD officers that he held no ill-will toward Gu for leaving Amaco.  Allen Yu's early acts of retaliation toward Gu demonstrate the falsity of Yu's later statements to NYPD following Gu's murder.

In the alternative, to the extent the Court finds that the evidence described above constitutes "other acts" under Rule 404(b), all of the evidence is admissible pursuant to that Rule for several permissible, non-propensity purposes, including to establish Allen Yu's motive, intent, planning and preparation to kill Chris Gu.

## II.   The Narcotics Evidence Concerning Zhang and Abreu Is Admissible

The government will offer evidence that Abreu and Zhang sold large quantities of marijuana together, ███████████████████████████████████████████████████████ ███████████████████████████████████████  The marijuana evidence is necessary to permit the jury to understand the nature of the relationship between Abreu and Zhang, the origin of their participation in the charged conspiracy, and the reason Zhang was paid in November 2019, more than nine months after Gu's murder.  It is also admissible because it corroborates key witness testimony and will likely be elicited on cross examination.

The government also expects to elicit testimony that Abreu and Zhang participated in a scheme to traffic cocaine from Mississippi to the East Coast in the winter and spring of 2020.  Abreu was arrested in 2020 and convicted the following year.  Zhang was never charged.  Evidence of this cocaine trafficking scheme is admissible because it will permit the jury to understand that the nature of the relationship between Abreu and Zhang involved the degree of trust necessary to engage in significant criminal activity together.  ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████

    A.    <u>Marijuana Evidence</u>

<u>First</u>, evidence as to Abreu and Zhang's marijuana sales is admissible because it establishes and explains the relationship between Abreu and Zhang.  Multiple witnesses will testify, and other documentary evidence will show, that Abreu worked for Zhang selling marijuana from 2017 through 2020.  Thus, the drug-trafficking overlapped, in part, with the murder conspiracy.  Indeed, several witnesses expected to testify know of Abreu and Zhang's connection because of their joint involvement in marijuana distribution.  In other words, when asked how Abreu and Zhang knew each other, the witnesses will answer that Abreu and Zhang had a relationship due to the marijuana business.  This relationship explains why Zhang, having been recruited to carry out Gu's murder, approached Abreu to pull the trigger.  And why Abreu, trusted Zhang to drive the getaway driver after Abreu shot Chris Gu.  Their longstanding relationship engaging in other criminal activity, the government submits, is a critical reason why Zhang trusted Abreu to engage in the much more serious charged criminal conduct. <u>Rivera</u>, 2015

WL 1875658, at *3 (finding that acts by co-conspirators prior to the start of the conspiracy illustrate the relationship between the defendants).

███████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████ See Diaz, 176 F.3d at 80 (evidence of uncharged acts admitted to show "how illegal relationships and mutual trust developed" between individuals). As described above, Zhang knew and trusted Abreu from their participation in the marijuana business and then recruited Abreu as the shooter.

Third, Zhang's marijuana business is also inextricably intertwined with the payment Zhang sought from Allen Yu more than nine months following the murder.

████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████ Accordingly, reference to the marijuana trafficking will be necessary to explain the sequence of events following the murder.

The Second Circuit has repeatedly and consistently held that evidence pertaining to how members of a conspiracy met, committed crimes together and grew to trust each other over time is relevant and admissible to explain the relationship between a defendant and his or her co-conspirators in the charged conspiracy. As the Second Circuit has put it: "One legitimate

purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case." Pipola, 83 F.3d at 566; see also Williams, 205 F.3d at 33-34; United States v. Pascarella, 84 F.3d 61, 72-73 (2d Cir. 1996); Araujo, 79 F.3d at 8; United States v. Alli-Balogun, 72 F.3d 9, 11-12 (2d Cir. 1995); United States v. Rosa, 11 F.3d 315, 334 (2d Cir. 1993); United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990).

Fourth, the evidence as to Abreu and Zhang's involvement in the marijuana industry is admissible because it will corroborate crucial testimony from several witnesses and explain the relationship of trust between Abreu, Zhang ████████████████ Everett, 825 F.2d at 660 (noting other acts evidence is admissible under Rule 404(b) to "corroborate crucial prosecution testimony" if it is "direct and the matter corroborated is significant") (internal quotation marks omitted); United States v. Mejia-Velez, 855 F. Supp. 607, 611 (E.D.N.Y. 1994); United States v. Bourne, No. 08-CR-888 (NGG), 2011 WL 4458846, at *12 (E.D.N.Y. Sept. 23, 2011); United States v. Basciano, No. 03-CR-929 (NGG), 2006 WL 385325, at *4 (E.D.N.Y. Feb. 17, 2006) (admitting evidence of uncharged crimes—including, gambling, loansharking/extortion, murder, conspiracy/attempted murder, and solicitation to murder—to corroborate the testimony of cooperating witnesses). ███████████████

███████████████████

████████████████████

███████████████████

████████████████████

██████████████

Finally, evidence concerning Abreu and Zhang's marijuana sales is admissible because the government anticipates ████████████████████████████ ████████ significant cross examination.  Therefore, the government should be allowed to elicit testimony about such acts on direct examination so as to avoid the appearance that the government is concealing such purported impeachment evidence from the jury. See, e.g., Guerrero, 882 F. Supp. 2d at 492-93.

B.    Cocaine Trafficking Scheme

The government expects to elicit brief testimony concerning a cocaine trafficking scheme involving Abreu and Zhang, ████████████████████████ ███████████████████████████████████████████ ███████████████

Such evidence is admissible because it shows the close relationship among Abreu, Zhang, ████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████

Therefore, the government should be allowed to elicit testimony about its witness' involvement in cocaine trafficking that necessarily implicates the defendants while on direct examination so

as to avoid the appearance that the government is concealing such purported impeachment evidence from the jury, see, e.g., Guerrero, 882 F. Supp. 2d at 492.

Finally, there is no risk that drug-trafficking would be offered or used to prove propensity. Drug-trafficking is not one of the charges in this case, and the government will not argue that the death of Gu had anything to do with marijuana or cocaine sales. To the extent there is any risk of confusion on this, a limiting instruction about the proper use of such evidence would readily cure any of the remote potential for prejudice to the defendants.

III.    Evidence of Abreu's Use of a Firearm is Admissible

The government expects to elicit testimony about Abreu's use and possession of a firearm before and after Chris Gu's murder, including testimony that Zhang described Abreu as a person "could take someone out," or kill a person, and a "real gangster" who was willing to commit violence, and testimony from two witnesses that Abreu told others (before and after the murder) that he was carrying a firearm. This evidence is admissible under Rule 404(b), for several permissible, non-propensity purposes, including to establish Abreu's knowledge, opportunity and means to commit the charged murder. Evidence that Abreu, the triggerman who killed Gu, possessed firearms is directly relevant to the charged conduct and will demonstrate his access to firearms and his opportunity to commit the murder of Chris Gu.

IV.    Abreu's 2019 Traffic Violation and Arrest Are Admissible

The government will offer evidence of concerning Abreu's use of fraudulent temporary West Virginia license plates on two occasions: first, on January 28, 2019, Abreu claimed a 2005 grey Honda Odyssey with temporary West Virginia license plate (No. 544 025) from the Queens vehicle impound lot, and, second, on March 10, 2019, Abreu was arrested in the same gray Honda Odyssey, with a temporary West Virginia license plate (No. 546 187), and

produced fraudulent registration, insurance card and bill of sale to the arresting officers. Evidence will show these plates were not issued by the state of West Virginia.

Abreu's use of these fraudulent license plates in the January 2019 towing violation and the March 2019 arrest for possession of fraudulent vehicle-related documents is direct evidence of the murder because the shooter fled the scene in a white Honda Accord bearing a fraudulent temporary West Virginia license plate that shared many of the same characteristics with the license plates used by Abreu. Accordingly, Abreu's use of these license plates, in the month before and after the murder, is one clear indication of his involvement in the murder of Chris Gu.

Evidence of Abreu's use of fraudulent license plates is also independently admissible under Rule 404(b) to establish Abreu's identity as the shooter in the February 2019 murder, as well as his preparation, plan, knowledge, absence of mistake, or lack of accident. See Fed. R. Evid. 404(b).

V.      Abreu's Efforts to Influence or Intimidate Witnesses Are Admissible



This evidence should be admitted because it is highly probative consciousness of guilt evidence indicative of Abreu's state of mind.



The message, translated into English, reads in part:

> I know those people came to see you, but that is fine. Do not get carried away by threats. Or lies. That's my advice. These people are dirty and only seek to do evil.  It's up to you, but you're a man and no one makes decision for you.   I say this to you as a friend and almost family that I am.  Yes, I know. They have pictures here, but they think that car has something to do with the issue I am being accused of, but that is fine . . . .  I know that you were forbidden to talk to me, definitely, but that's fine.  It's up to if they find out.  It is all the same to me.

These probative values of these messages is clearly significant.  Both messages indicate Abreu's involvement, participation and knowledge of the charged crimes as well as his consciousness of guilt.  They show that Abreu sought to keep ████████████████ from speaking to and cooperating with law enforcement so as not to reveal Abreu's involvement in the murder.  The SnapChat message further corroborates that Abreu ██████ had an arrangement concerning a car (Abreu: "they think that car has something to do with the issue I am being accused of, but that is fine"), as the evidence will show that Abreu sold the getaway car immediately following the murder.

Courts routinely admit proof that is probative of consciousness of guilt as direct evidence, including evidence that defendants or their conspirators sought to cover up what they had done, keep evidence away from law enforcement and track a developing criminal

20

investigation.  See generally, e.g., United States v. Perez, 387 F.3d 201, 209 (2d Cir. 2004) (noting

that the Second Circuit has "upheld the admission of various kinds of evidence on the ground that

it demonstrated consciousness of guilt"); Mickens, 926 F.2d at 1329 (holding that evidence

regarding defendant's "effort to intimidate a key prosecution witness was probative of

[defendant's] state of mind"); United States v. Ochs, 595 F.2d 1247, 1260 (2d Cir. 1979) (holding

that evidence of defendant's attempt to bribe a witness "was admissible as showing consciousness

of guilt"); United States v. Triumph Capital Group, Inc., 544 F.3d 149, 160 (2d Cir. 2008)

("[Defendant]'s efforts to obstruct the investigation evidence a consciousness of guilt . . . .");

United States v. Carpenter, 372 F. Supp. 3d 74, 80 (E.D.N.Y. 2019) (evidence of the "remote wipe"

of an electronic device "is probative of the Defendant's consciousness of guilt"); United States v.

Sprecher, 783 F. Supp. 133, 155 (S.D.N.Y. 1992) ("It is difficult to imagine more compelling

evidence of consciousness of guilt than the elaborate efforts of [defendant] to prevent the

production of the [b]ank [ ] records."), aff'd, 988 F.2d 318 (2d Cir. 1993); cf. United States v.

Sakoc, 2014 WL 7336079, at *6 (D. Vt. Dec. 22, 2014) (finding that "vague" conversations

recorded in jail calls that "could be interpreted to potentially refer to witness tampering" were

admissible to show consciousness of guilt and defendant's objections to such evidence "go to

weight rather than admissibility").

VI.    The Rule 403 Balancing Test

          The probative evidence the government seeks to admit herein is not substantially

outweighed by any prejudicial effect.

          The Second Circuit has emphasized that evidence admissible for a proper purpose

under Rule 404(b) ordinarily will not be precluded by Rule 403 if the evidence "does not involve

conduct any more sensational or disturbing than the crimes with which the defendant has been

charged."  See, e.g., United States v. Rosemond, 958 F.3d 111, 126 (2d Cir. 2020) ("Rosemond was charged with murder-for-hire, which is far more sensational and disturbing than the conduct admitted as prior bad acts," including several acts of violence); Roldan-Zapata, 916 F.2d at 804.

None of the conduct described herein is more sensational than murder-for-hire.  See United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999) (upholding admissibility of evidence that the defendant, a police officer charged with engaging in excessive use of force with an arrestee, choked another arrestee, on the basis that "the evidence did not involve conduct more inflammatory than the charged crime, and the district court gave a careful limiting instruction").  Moreover, none of the conduct involves violence.  The steps Allen Yu took to thwart Chris Gu's new company are not themselves violations of criminal law.  Abreu's use of fraudulent license plates and Abreu and Zhang's narcotics trafficking do not involve victims.

Finally, any prejudicial effect could be further reduced with a limiting instruction.  See Huddleston v. United States, 485 U.S. 681, 691-92; Mickens, 926 F.2d at 1328-29.

VII.    Request for Sealing

The government respectfully requests that this letter be filed under seal and that portions of this letter pertaining to the testimony of one or more cooperating and civilian witnesses whose identities may be identified by information contained in the letter be redacted for public filing.  The risk to the safety of these witnesses outweighs the public's right to disclosure.  United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect the integrity of an ongoing investigation, including the safety of witnesses, may be compelling reason to justify sealing).  Moreover, unsealing this letter, and thus potentially revealing witness identities publicly will likely harm the ability of law enforcement to secure current and future cooperation from persons similarly situated, a fact that also weighs against public disclosure.

<u>CONCLUSION</u>

For the reasons set forth above, the Court should grant the government's motion <u>in</u>

<u>limine</u>.

Dated: Brooklyn, New York
       July 28, 2023

                                        Respectfully submitted,

                                        BREON PEACE
                                        United States Attorney
                                        Eastern District of New York

                              By:       _____/s/_____
                                        Devon Lash
                                        Gabriel Park
                                        Assistant United States Attorneys
                                        (718) 254-6014 (Lash)

cc:     All counsel (by ECF)

23